UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANE ROSCOE,

          Petitioner,

v.

CONNIE HORTON,

          Respondent.

_____/

Case No. 2:16-cv-11133

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
DENYING PETITIONER'S
MOTION FOR A STAY [16], DENYING
THE AMENDED PETITION [10], DECLINING
TO ISSUE A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Shane Roscoe ("Petitioner"), a state inmate confined at the Chippewa Correctional Facility in Kincheloe, Michigan, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in Washtenaw County Circuit Court and now challenges his convictions for first-degree, felony murder, Mich. Comp. Laws § 750.316(1)(b), safe breaking, Mich. Comp. Laws § 750.531, breaking and entering a building with intent to commit a larceny, Mich. Comp. Laws § 750.110, and assaulting, resisting, or obstructing a police officer, Mich. Comp. Law § 750.81d. Before the Court are Petitioner's amended petition and recent motion for a stay of this case while he pursues additional state remedies. For the reasons below, the Court will deny Petitioner's motions for a stay and to amend the petition.

1

## BACKGROUND

The primary charges against Petitioner arose from a breaking and entering at the Jim Bradley car dealership in Washtenaw County early on August 18, 2006. As explained by the Michigan Court of Appeals, the breaking and entering

> resulted in the death of one of the employees. It was alleged that defendant and his [nephew], Jonathon Aiden, broke into the dealership, where they had previously worked, and stole paint and chemical hardeners. In the process, one of the night workers discovered the two men, and as a result, they hit him in the head twice with a blunt object and then ran him over with his own vehicle.

*People v. Roscoe*, 303 Mich. App. 633, 638–39 (2014).

The evidence at trial also established that, at 4:14 a.m. on the day of the crimes, Aiden called the 911 operator and stated that someone in the parking lot of the dealership needed assistance. ECF 14-12, PgID 1067. Aiden and Petitioner subsequently went to Petitioner's home in Pinckney, Michigan.

Later that same day, Petitioner informed his wife Kimberly that he and Aiden had gone to the dealership and tried to rob the place, but something had gone terribly wrong. He explained that Sam, the security guard, had confronted Aiden in the parking lot of the dealership and that he (Petitioner) had hit the guard twice on the back of the head with a brick. Petitioner also stated that he and Aiden took a cell phone from the dealership, and after Aiden called 911, they threw the cell phone out the window of Petitioner's truck. Aiden later got rid of the things that the two men took from the dealership by placing the things in a dumpster in the Detroit area. ECF 14-13, PgID 1097–98.

Meanwhile, at approximately 5:15 a.m. that same day, an employee of the dealership arrived for work and saw the injured victim stumble out of nearby trees. The employee called the police, and when paramedics arrived at the scene, the victim stated that he had been run over by a vehicle. ECF 14-11, PgID 905, 924, 927, 929.

During an investigation of the crimes, the police interviewed and photographed employees of the dealership, and on August 23, 2006, a detective went to the hospital and spoke with the victim. The detective showed the victim forty-one photographs of current and former employees of the dealership, because the victim had previously said that his attackers were current or former mechanics at the dealership. Out of those forty-one photographs, the victim isolated five photographs, including the photographs of Petitioner, Aiden, an employee named Kurt Kuehne, and two other men. The victim informed the police that Petitioner and Koehne definitely were his attackers and that Aiden could have been one of his attackers. ECF 14-13, PgID 1144–46; ECF 14-14, PgID 1152. The police eventually eliminated Kuehne as a suspect. ECF 14-14, PgID 1152.

The victim died in the hospital on September 14, 2006, while the investigation was ongoing. *Id*. at 1153. Petitioner was briefly taken into custody, but then released and not charged with anything. ECF 14-13, PgID 1090. In 2011, Petitioner and his wife Kimberly divorced.[1] Kimberly then informed the police about Petitioner's involvement in the crimes at the dealership. *Id*., PgID 1093–94.

---

[1] Kimberly remarried and testified at trial under the name Kimberly Flamil.

Petitioner was subsequently charged with open murder, safe breaking, breaking and entering a building with intent to commit a larceny, and two counts of resisting and obstructing a police officer. The last two counts arose from Petitioner's attempts to avoid being handcuffed after he was taken into custody on August 24, 2006, and placed in an interview room at the Washtenaw County Sheriff's Department. ECF 14-12, PgID 1045, 1047–49, 1071–73.

Petitioner was tried in Washtenaw County Circuit Court in 2012. There was no physical evidence (fingerprints, shoe impression, DNA, murder weapon, or stolen items) linking him to the crimes. The primary evidence against him on the murder, breaking-and-entering, and safe breaking charges came from his ex-wife Kimberly and the detectives who spoke with the murder victim in the hospital. Petitioner did not testify or present any witnesses. His defense was that he was not guilty, that he was at home during the commission of the crimes at the car dealership, that Kimberly was a bitter ex-wife and a liar, and that the prosecution had not proved its case beyond a reasonable doubt.

On the first count, the trial court instructed the jury on premeditated murder, felony murder, second-degree murder, and voluntary manslaughter. On June 8, 2012, the jury found Petitioner guilty of felony murder, safe breaking, breaking and entering a building with intent to commit a larceny, and one count of resisting and obstructing a police officer. The jury acquitted Petitioner of premeditated murder and one additional count of resisting and obstructing a police officer.

The trial court sentenced Petitioner to life imprisonment without the possibility of parole for the murder. The court also sentenced Petitioner as a fourth habitual offender to concurrent terms of nineteen to fifty years in prison for the safe-breaking conviction, twelve years, eight months to twenty years in prison for the breaking-and-entering conviction, and one to two years in prison for the resisting-and-obstructing conviction.

In an appeal as of right, Petitioner argued through counsel that the admission of the victim's hearsay statements deprived him of a fair trial and his right of confrontation, that counsel's failure to object to the hearsay on constitutional grounds deprived him of effective assistance, and that the admission of "other acts" evidence deprived him of due process. In a pro se supplemental brief, Petitioner argued that the trial court's failure to disqualify itself was a structural error, that the prosecutor's misconduct deprived him of due process and a fair trial, and that the trial court violated his right to an impartial jury and fair trial by not dismissing an alternate juror by random draw. The Michigan Court of Appeals rejected Petitioner's claims and affirmed his convictions in a published opinion. *See Roscoe*, 303 Mich. App. at 633. The Michigan Supreme Court denied leave to appeal. *See People v. Roscoe*, 497 Mich. 946 (2014).

On September 25, 2015, Petitioner filed a motion for relief from judgment, in which he argued that his trial attorney had an actual conflict of interest and that the trial court abused its discretion by appointing counsel with an actual conflict of interest. ECF 14-18. While that motion was pending in the state trial court, Petitioner

filed his habeas corpus petition, ECF 1, and a motion to stay the federal proceeding while he continued to pursue state remedies, ECF 3. On May 17, 2016, the Court granted Petitioner's motion for a stay, held this case in abeyance, and administratively closed the case. ECF 6.

On July 18, 2016, the Washtenaw County Circuit Court denied Petitioner's motion for relief from judgment, ECF 14-19, and on December 28, 2016, the Michigan Court of Appeals denied his application for leave to appeal the trial court's decision. *See People v. Roscoe*, No. 334281 (Mich. Ct. App. Dec. 28, 2016), ECF 14-20, PgID 1588. Subsequently, Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which denied the application on November 29, 2017. *People v. Roscoe*, 501 Mich. 925 (2017).

Petitioner then returned to the Court and filed a motion to lift the stay, ECF 8, a motion to amend his petition, ECF 9, and an amended petition, ECF 10. On February 27, 2018, the Court granted Petitioner's motions to lift the stay and to amend the petition and ordered Respondent to file an answer to the allegations in the amended petition. ECF 11. On June 14, 2018, Respondent filed a response to the amended petition with the state-court record, ECF 13,14, and on July 13, 2018, Petitioner filed a reply, ECF 13–15. Finally, on July 9, 2019, Petitioner filed another motion to stay the federal proceeding. ECF 16.

## STANDARD OF REVIEW

The Court may not grant habeas relief to a state prisoner unless his claims were adjudicated on the merits and the state court adjudication was "contrary to" or

resulted in an "unreasonable application of" clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1).

The Supreme Court has held that a state court's decision is contrary to "clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

The state court unreasonably applies Supreme Court precedent not when its application of precedent is merely "incorrect or erroneous" but when its application of precedent is "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 654 (2004)).

A federal court reviews only whether a state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). A state court need not cite to or be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Further, decisions by lower federal courts "may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503

F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)).

Finally, a federal habeas court presumes the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may successfully rebut the presumption only by clear and convincing evidence. *Id.*

## DISCUSSION

I.  <u>Motion to Stay Proceedings</u>

In his pending motion for a stay, Petitioner asks the Court to hold his petition in abeyance while he files another motion for relief from judgment in the state trial court. The state-court motion alleges that Petitioner has newly-discovered evidence consisting of Washtenaw County Detective John Scafasci's application for a pen register and "trap and trace" device for a cellular telephone used by Aiden. ECF 16, PgID 1811–21. The application states, among other things, that at 0527 hours, approximately 75 minutes after the homicide, Aiden's cell phone made calls that bounced off a cell phone tower in Ann Arbor, Michigan. *Id.* at 1819, ¶ GG.

Petitioner asserts that the statement about Aiden's cell phone is exculpatory evidence because it reveals that Aiden was in Ann Arbor at 5:30 a.m. on the day of the crime even though Petitioner's ex-wife Kimberly testified at trial that he and Aiden were at the Roscoes' home in Pinckney at the time. Petitioner further alleges in his proposed state-court motion that the prosecutor relied on Kimberly's false testimony regarding Aiden's whereabouts at 5:30 a.m. on the day of the crime. Finally, Petitioner claims that he is innocent of the crimes for which he is incarcerated.

"A federal district court has authority to abate or to dismiss a federal habeas action pending resolution of state post-conviction proceedings." *Sitto v. Bock*, 207 F. Supp.2d 668, 676 (E.D. Mich. 2002) (citing *Brewer v. Johnson*, 139 F.3d 491, 493 (5th Cir. 1998)). But "to stay federal proceedings and to hold a habeas petition in abeyance pending resolution of state court proceedings" requires "exceptional or unusual circumstances." *Id.* Furthermore, a federal court ordinarily may grant a motion for a stay only if (1) the petitioner shows good cause for his failure to exhaust his claim first in state court, (2) the unexhausted claim is not plainly meritless, and (3) the petitioner is not engaged in dilatory tactics. *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005).

Petitioner's proposed new claim about Detective Scafasci is based on *Brady v. Maryland*, 373 U.S. 83 (1963), in which the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. To prevail on his *Brady* claim, Petitioner must show that the evidence at issue is favorable to him, "either because it is exculpatory, or because it is impeaching; that the evidence" was "suppressed by the State, either willfully or inadvertently;" and that he was prejudiced by suppression of the evidence. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Here, even if the Court were to assume that the prosecution suppressed Detective Scafasci's application for information about Aiden's cell-phone usage,

Petitioner's *Brady* claim still fails. As noted above, Detective Scafasci indicated in his application for a pen register that Aiden's cell phone call at 5:27 a.m. on August 18, 2006, bounced off a cell phone tower in Ann Arbor. This does not necessarily mean that Aiden was in Ann Arbor at the time. It also does not contradict Kimberly Flamil's trial testimony because she did not say exactly when Petitioner and Aiden arrived at her and Petitioner's home in Pinckney on August 18, 2016. She merely testified that the two men arrived *sometime before* 5:30 a.m. on August 18, 2016. ECF 14-13, PgID 1097 (emphasis added). This testimony did not exclude the possibility that Aiden made calls that bounced off an Ann Arbor cell tower at 5:27 a.m. that day. In fact, there was testimony that someone used the Roscoes' land line to call Aiden's cell phone at 5:33 a.m. that day. ECF 14-14, Pg ID 1159.

Furthermore, an employee for Metro PCS cell phone company indicated at trial that a signal from Aiden's phone hit a cell tower as early as 5:27 a.m. on August 18, 2006. ECF 14-13, PgID 1135. Consequently, the jury was made aware that Aiden was on the move as early as 5:27 a.m. on August 18, 2016.

The information in Detective Scafasci's application is therefore not exculpatory new evidence, and Petitioner's *Brady* claim does not have sufficient merit to warrant holding his habeas petition in abeyance.

Petitioner's claim that the prosecutor suborned perjury also fails. To prevail on that claim, Petitioner must show that (1) Kimberly (Roscoe) Flamil's trial testimony was false, (2) the testimony was material, and (3) the prosecutor knew the testimony was false. *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012). Petitioner concludes

from Detective Scafasci's application for a pen register for Aiden's cell phone that Ms. Flamil lied when she testified that Aiden and he were at her and Petitioner's home at 5:30 a.m. on August 18, 2006. As explained above, however, Ms. Flamil stated that Aiden and Petitioner were at her and Roscoe's home sometime before 5:30 a.m. She did not provide an exact time for their arrival.

Petitioner has failed to show that Ms. Flamil's testimony was false and that the prosecutor knew Ms. Flamil's testimony was false. Therefore, his perjury claim does not have sufficient merit to warrant holding his habeas petition in abeyance, and to the extent that Petitioner is raising an independent claim of actual innocence, his claim is not cognizable on habeas review. *Herrera v. Collins*, 506 U.S. 390, 400 (1993).

The Court concludes that the claims presented in Petitioner's proposed motion for relief from judgment lack merit. Therefore, Petitioner is therefore not entitled to a stay while he pursues additional state remedies. The Court will proceed to address his current claims.

II.  The Habeas Petition

Petitioner raises seven general grounds for relief. The Court addresses each in turn.

A.  *The Victim's Hearsay Statements*

In his first and second claims, Petitioner alleges that the trial court abused its discretion, violated his rights to due process and a fair trial, and violated his constitutional right to confront the witnesses against him by admitting testimony

about the victim's hearsay statements. In the trial court and on appeal, the contested statements were the ones made on August 23, 2006. On that date, the victim identified Petitioner in a photograph and stated that Petitioner definitely was one of his attackers. The victim also identified Aiden in a photograph and said that Aiden could have been one of his attackers. ECF 14-13, PgID 1145–46; ECF 14-14, PgID 1152.

The trial court ruled that the victim's statements were admissible under the forfeiture-by-wrongdoing exception to the hearsay rule in Michigan Rule of Evidence 804(b)(6). On appeal, the Michigan Court of Appeals reviewed Petitioner's evidentiary argument for an abuse of discretion, but it reviewed Petitioner 's constitutional claim for "plain error affecting [his] substantial rights," presumably because Petitioner did not raise his claim as a constitutional issue in the trial court. *People v. Roscoe*, 303 Mich. App. 633, 648 (2014).[2] The Court of Appeals then analyzed Petitioner's claim and agreed with him that the trial court erred by admitting the victim's statements to the police on August 23, 2006. The Court of Appeals nevertheless concluded that

---

[2] Respondent argues that Petitioner's constitutional claim is procedurally defaulted because the Michigan Court of Appeals reviewed that claim for "plain error." A procedural default, however, is not a jurisdictional matter, *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003). Petitioner's first and second claims do not warrant habeas relief, and the Court finds it more efficient to address the substantive merits of the claims than to determine whether the claims are procedurally defaulted. The Court, therefore, excuses the alleged procedural default in claims one and two and proceeds to address those claims on their merits.

reversal was not warranted under evidentiary or constitutional standards because the error was not outcome determinative. *Id*. at 642.

The contention that the state trial court erred in its interpretation of Michigan Rule of Evidence 804(b)(6) lacks merit because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "To the extent that any testimony and comments violated Michigan's rules of evidence, such errors are not cognizable on federal habeas review." *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009). A claim of improperly admitted evidence is no part of a federal court's review of a state conviction because, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Petitioner's constitutional claim, of course, is cognizable on habeas review, because the Sixth Amendment guarantees the accused in criminal cases with "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Under *Crawford v. Washington*, 541 U.S. 36, 52, 68 (2004), and *Davis v. Washington*, 547 U.S. 813, 822 (2006), the victim's statements to the police arguably were "testimonial," and inadmissible because the victim was unavailable to testify at Petitioner's trial due to his death, and Petitioner had no prior opportunity to confront him.

The Michigan Court of Appeals, however, ruled that the evidentiary and constitutional errors were harmless. Errors under the Confrontation Clause are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986);

*Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007). The Court, therefore, must determine whether the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson,* 507 U.S. 619, 637–38 (1993) (internal citations omitted), and whether the state court's finding of harmlessness was unreasonable. *Davis v. Ayala*, 135 S. Ct. 2187, 2198–99 (2015).

The victim's identification of Petitioner as one of his attackers was substantial evidence against Petitioner, but there was other evidence of his guilt. His ex-wife, Kimberly, testified that Petitioner admitted to hitting the victim twice in the back of the head with a brick during the course of breaking and entering the car dealership.

Furthermore, on August 20, 2006, the victim gave a general description of his attackers as two white men, one with dark hair and one clean-shaven, both of whom worked for or used to work as mechanics at the dealership. ECF 14-12, PgID 1068; ECF 14-13, PgID 1087. On August 26, 2006, the victim reiterated that one of the individuals who had assaulted him used to work as a mechanic at the dealership and that the individual's name began with an "S." ECF 14-12, PgID 1032–33, 1036. Petitioner is not challenging the statements made on August 20, 2006, or August 26, 2006, and he matched the general description of a white male with dark hair who formerly was employed at the car dealership as a mechanic. *See* ECF 14-12, PgID 1069–70. Moreover, after the incident at the dealership,

> [Petitioner] asked his wife [Kimberly], who worked at the hospital, to look into the victim's medical records. There was also evidence that he conducted Internet searches regarding the incident, and he also searched the Ann Arbor death notices and the felonious-assault statute. This is evidence of consciousness of guilt. Additionally, defendant told the police that he still had keys to the dealership, and notably, there was

14

no evidence of forced entry. He also made statements to the police that showed that he had personal knowledge of the victim's attack given that the details had not been released to the public. Further, there was evidence that defendant had a history of stealing from dealerships, and while executing a search warrant at defendant's home, the police found stolen car parts unrelated to the present offense.

*Roscoe*, 303 Mich. App. at 642–43. The Michigan Court of Appeals concluded that, "in light of this other evidence, the erroneous admission of the victim's statement was not outcome determinative." *Id.*

The state appellate court's determination of the facts is supported by the record, and for the reasons given by the state court, the Court finds that the alleged confrontation error could not have had a substantial and injurious effect or influence on the jury's verdict. The state court's conclusion—that the evidentiary and constitutional errors were harmless—is therefore objectively reasonable, and Petitioner is not entitled to relief on his first and second claims.

### B. *Trial Counsel's Failure to Object*

Petitioner's third claim alleges that his trial attorney deprived him of effective assistance by failing to object to the victim's hearsay statements on the ground that the hearsay statements violated his right of confrontation. Petitioner contends that his trial attorney's reliance on state grounds only was not sound trial strategy and that it allowed the prosecution to admit highly prejudicial evidence. The Michigan Court of Appeals disagreed and concluded that he was not deprived of his constitutional right to effective assistance of counsel. *Id.* at 645.

The "clearly established Federal law" here is *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel under

*Strickland*, a defendant must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id*. at 687. The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. In addition, "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal and end citations omitted).

To his credit, Petitioner's trial attorney argued vigorously before the trial court that the victim's statements on August 23, 2006, were inadmissible. ECF 14-7. Although he did not raise the issue under the Confrontation Clause, the Michigan Court of Appeals pointed out that the analysis for the evidentiary and constitutional questions is the same.[3] A constitutional argument probably would have been futile,

---

[3] As the Michigan Supreme Court explained,

as the trial court in all likelihood would not have ruled differently had Petitioner made an argument under the Confrontation Clause. "[T]he failure to make futile objections does not constitute ineffective assistance." *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016). Furthermore, because the alleged constitutional error was harmless, Petitioner was not prejudiced by his trial attorney's failure to raise the issue under the Confrontation Clause.

The state appellate court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of *Strickland* and given the double deference due the state-court's decision on habeas review, Petitioner is not entitled to relief on his claim.

### C. "Other Acts" Evidence

Petitioner alleges next that the trial court deprived him of due process and a fair trial by allowing the prosecution to admit "other acts" evidence against him. The "other acts" evidence included testimony that: in 1991, Petitioner (i) broke into a dealership and stole a tool chest, (ii) stole a Jeep from another dealership, and (iii) stole a cash register from still another dealership, ECF 14-12, PgID 1061–64. Furthermore, the other acts evidence also included testimony that in 2000, Petitioner was involved in the theft of snowmobiles and a trailer, ECF 14-12 PgID 1023-24; and

---

evidence offered under the forfeiture exception will very regularly be testimonial and subject to Sixth Amendment scrutiny. As forfeiture by wrongdoing is the only recognized exception to the Sixth Amendment's guarantee of the right to cross-examine adverse witnesses, the constitutional question will often go hand-in-hand with the evidentiary question.

*People v. Burns*, 494 Mich. 104, 113–14 (2013) (footnote omitted).

in 2008, he stole granite and bags of setting materials from a construction site in Kentucky where he was working. ECF 14-12, PgID 1056–60. Petitioner contends that the "other acts" evidence violated his rights to due process of law and a fair trial because the acts occurred years earlier, it was unsubstantiated, and its prejudicial value outweighed any probative value. Petitioner also alleges that he was in state custody from November 1988 through February 1992 and could not have committed some of the crimes.

The Michigan Court of Appeals concluded on review of Petitioner's claim that the trial court did not err in admitting the evidence under Michigan Rule of Evidence 404(b) and that there was no due process violation. The Court rejects Petitioner's state-law claim because the Supreme Court has made clear that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

In addition, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Although "the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, it has not explicitly addressed the issue in constitutional terms." *Id*. at 513 (internal citations omitted). Thus, "there is

no Supreme Court precedent that the trial court's decision could be deemed 'contrary to' under AEDPA." *Id.*

Of course, "[i]f a ruling is especially egregious and 'results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief.'" *Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017) (quoting *Bugh*, 329 F.3d at 512). But state-court evidentiary rulings do not rise to the level of due process violations unless they offend a fundamental principle of justice. *Id.* at 475–76. "Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause." *Id.* at 476.

In the present case, moreover, the disputed evidence was admitted to show that Petitioner had a pattern of breaking into businesses, and that he had specialized knowledge about vehicles, stealing things in groups, and how to use things together. ECF 14-8, PgID 785. This was a proper purpose for admitting the evidence. *See* Mich. R. Evid. 404(b)(1) (stating that evidence of other crimes, wrongs, or acts may be admissible for purposes such as "scheme, plan, or system in doing an act . . . when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case").

Furthermore, the trial court instructed the jurors that they could use evidence of other crimes Petitioner committed only to decide whether (a) he "had a reason to commit the crime," (b) he "acted purposefully, that is, not by accident or mistake or because he misjudged the situation," (c) he "used a plan, system, or characteristic scheme that he had used before or since," and (d) he committed the crime for which

he was charged. The court charged the jurors not to use the "other acts" evidence to decide that Petitioner was a "bad person or likely to commit crimes" or because they thought he was guilty of other bad conduct. ECF 14-14, PgID 1213–14.

The Court concludes that the admission of "other acts" evidence did not violate Petitioner's right to due process. He is not entitled to relief on his claim.

### D. Denial of the Motion for the Trial Court to Recuse

Petitioner's fifth ground for relief alleges that the trial court deprived him of due process, a fair trial, and an unbiased arbiter when it denied his motion to recuse the court. To support this argument, Petitioner points out that, at the pretrial hearing on his motion to exclude the victim's hearsay statements to a detective, the trial court stated that there was evidence Petitioner had murdered the victim and, therefore, he had forfeited his right to confront the victim. ECF 14-7, PgID 768. Petitioner argues that this comment was evidence of judicial bias because, at the time, the court had not heard any testimony, nor had it participated in any fact-finding proceedings.

Petitioner raised this issue in a pro se motion to disqualify the trial court on the first day of trial. Petitioner asked the court to recuse itself from hearing any more of the case and to appoint another judge. The trial court, however, denied the motion, stating that its adverse ruling and view of the law were not valid grounds for disqualification and that Petitioner had not shown actual bias. ECF 14-10, PgID 810–11. Petitioner also raised his claim on direct appeal, but the Michigan Court of Appeals concluded that Petitioner had failed to prove judicial disqualification was warranted. *Roscoe*, 303 Mich. App. at 647–48.

To prevail on a claim of judicial bias, a defendant must show "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964). Judicial rulings, moreover, "almost never constitute a valid basis for a claim of judicial bias or partiality." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Additionally, "opinions formed by the judge [based on] facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*

Petitioner's claim of judicial bias is based on comments the trial court made when ruling on his motion to exclude the victim's statements to the police. Although Petitioner contends that the court said he murdered the victim and that there was evidence of that, the court was not expressing its personal opinion of his guilt or innocence when it made that remark. Instead, the court said that the issue was whether Petitioner had forfeited his right to confront the victim by murdering him. ECF 14-7, PgID 19. The court concluded from the pleadings and oral arguments that there was evidence Petitioner had murdered the victim, but the court made it clear that the determination of guilt or innocence was a matter for the jury to decide. *Id.*

Petitioner has failed to show that there was bias, or such an appearance of bias that the trial court was unable to balance the court's interests against his interests. The state appellate court's rejection of Petitioner's claim was not contrary to, or an

unreasonable application of, Supreme Court precedent, and Petitioner is therefore not entitled to relief on his claim.

*E. The Prosecutor's Conduct*

Petitioner's next claim alleges prosecutorial misconduct. Petitioner contends that the prosecutor presented prejudicial evidence that he previously broke into two businesses and stole a trailer and snowmobiles. He asserts that the thefts never occurred and that the testimony was an attempt to portray him as a serial burglar.

Petitioner also blames the prosecutor for accusing a prosecution witness of lying and then stating that she had personal knowledge the witness was lying. ECF 14-12, PgID. 1019–20. He contends that this comment rendered his trial unfair and deprived him of due process.

The Michigan Court of Appeals reviewed Petitioner's prosecutorial-misconduct claims for "plain error" and then concluded that the prosecutor did not commit misconduct, opining that, even though it was error for the prosecutor to suggest that a witness was lying and that the prosecutor had special knowledge that the witness was lying, the error was not determinative, and it did not deprive Petitioner of a fair trial.

Respondent argues that Petitioner's prosecutorial-misconduct claim is procedurally defaulted due to the state court's analysis under a "plain-error" standard of review. The Court, however, "cut[s] to the merits because an analysis of cause and prejudice would only complicate this case." *Thomas v. Meko*, 915 F.3d 1071, 1074 (6th

Cir. 2019) (citing *Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011)), *cert. denied*, __ S. Ct. __, 2019 WL 2076712 (U.S. June 17, 2019).

On habeas review, "state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). Consequently, although prosecutors must "refrain from improper methods calculated to produce a wrongful conviction," *Viereck v. United States*, 318 U.S. 236, 248 (1943), prosecutorial-misconduct claims are reviewed deferentially on habeas review. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

"Prosecutorial misconduct not invoking a specific provision of the Bill of Rights is reviewed under the general standard for due-process violations: whether the misconduct was so egregious as to deny the defendant a fundamentally fair trial." *LaMar v. Houk*, 798 F.3d 405, 430 (6th Cir. 2015) (citing *DeChristoforo*, 416 U.S. at 643–45). "If the misconduct was harmless, then as a matter of law, there was no due-process violation." *Bryan v. Bobby*, 843 F.3d 1099, 1113 (6th Cir. 2016) (citing *Greer v. Miller*, 483 U.S. 756, 765 n.7 (1987)), *cert. denied*, 138 S. Ct. 179 (2017). For the following reasons, the Court finds that the prosecutor's conduct and remarks either were not improper or they were harmless error.

1. Evidence of other thefts

Petitioner's first objection to the prosecutor's conduct is that she presented "other acts" evidence that Petitioner previously broke into two businesses and stole a

trailer and snowmobiles. He claims that there was no evidence of a burglary at the two businesses or that he assisted his nephew, Shane Doolittle, in stealing the trailer and snowmobiles. He maintains that the prosecutor admitted the evidence to portray him as a serial burglar.

Doolittle testified that he alone stole the trailer and snowmobiles, and he denied previously telling the prosecutor that Petitioner had committed the crime with him. ECF 14-12, PgID 1018–21. It is also true that the owners of the two businesses from which the trailer and snowmobiles were taken did not mention a breaking and entering or burglary when they testified at Petitioner's trial; they merely stated that the items were stolen or that there was a theft from their property. *Id.* at 1021 (Jorgen Jensen's testimony); *id.* at 1022 (Tim Thomas's testimony). The trial court, however, had previously authorized the prosecutor to admit "other acts" evidence, and the prosecutor was entitled to rely on the trial court's evidentiary ruling. *Cristini v. McKee,* 526 F.3d 888, 900 (6th Cir. 2008). Accordingly, the prosecutor did not commit misconduct by introducing evidence about the stolen trailer and snowmobiles.

As previously discussed, a claim that "other acts" evidence was admitted at trial generally is not a cognizable claim on habeas review. *Bugh*, 329 F.3d at 512. Furthermore, there was some evidence that Petitioner and Doolittle actually did steal the trailer and snowmobiles. Milford police officer Adam Post testified that he encountered Petitioner with the trailer and snowmobiles on December 20, 2000, when the Jeep that had been pulling the trailer and the snowmobiles got stuck in a field. Petitioner was unable to provide Officer Post with registration for the stolen items,

and Post determined that Petitioner was not the owner of the snowmobiles. Post followed footprints in the snow and then discovered Doolittle lying face down in the snow. He impounded the trailer and snowmobiles and later learned that they had been stolen. ECF 14-12, PgID 1023–24. The Court concludes that the prosecutor did not deprive Petitioner of due process or a fair trial by admitting "other acts" evidence regarding the theft of the trailer and snowmobiles.

### 2. Calling someone a liar.

Petitioner's only other claim about the prosecutor is that she accused Doolittle of lying when he testified that he had not previously informed the prosecutor that Petitioner was involved in the theft of the trailer and snowmobiles. In addition to accusing Doolittle of lying, the prosecutor stated that she had personal knowledge that Doolittle was lying. ECF 14-12, PgID. 1019–20. Petitioner contends that this comment deprived him of due process and rendered his trial unfair.

Prosecutors should refrain from interjecting personal beliefs into the presentation of their cases. *United States v. Young*, 470 U.S. 1, 8 (1985). A prosecutor also may not "imply that he has special knowledge of facts not before the jury by virtue of his office." *United States v. Martin*, 516 F. App'x 433, 441 (6th Cir. 2013) (citing *Johnson v. Bell,* 525 F.3d 466, 482 (6th Cir. 2008), and *United States v. Francis,* 170 F.3d 546, 550 (6th Cir.1999)).

But, Officer Post's testimony, as described above, tended to show that Doolittle was lying when he claimed Petitioner was not involved in the theft of a trailer and snowmobiles. Kimberly Flamil also testified about the incident with the trailer and

snowmobiles. She claimed that Petitioner had told her that he and Doolittle stole the snowmobiles and were caught by the police. ECF 14-13, PgID 1102–03.

Given Officer Post's testimony, as well as Ms. Flamil's testimony, the prosecutor's remarks about Doolittle being a liar could not have had a substantial and injurious effect or influence on the jury's verdict. As such, the improper remarks were harmless, and Petitioner is not entitled to relief on his prosecutorial-misconduct claim.

*F. Conspiracy.*

Petitioner's seventh claim alleges that the trial court, the prosecutor, and his trial attorney conspired to remove Juror #10 and then, after the court's charge to the jury, excused Juror #10 as an alternate juror instead of randomly picking alternate jurors. *See* ECF 14-14, PgID 1182, 1219–20. Petitioner contends that he did not agree to this method of removing alternate jurors and that it deprived him of an impartial jury. He further alleges that, under Michigan Court Rule 6.411, the proper way to determine alternate jurors is by random selection.

The Michigan Court of Appeals determined that Petitioner waived his claim because his trial attorney requested that Juror #10 be excused and because he did not object when his attorney made the request. *Roscoe*, 303 Mich App at 650. The decision to excuse the juror, however, was made during a bench conference, ECF 14-14, PgID 1182, and Petitioner claims that he was not present at the time. He also claims that he had previously informed his attorney that he wanted the alternate jurors to be randomly selected.

Even if Petitioner did not waive his claim, the contention that the parties and trial court did not comply with the Michigan Court Rule on alternate jurors is not a basis for habeas relief. *Jeffers*, 497 U.S. at 780.

Furthermore, Petitioner has not shown that picking Juror #10 as an alternate juror deprived him of an impartial jury. The Court therefore declines to grant relief on Petitioner's claim that the removal of a specific juror as an alternate juror violated his constitutional rights to a fair trial, due process of law, and a trial by an impartial jury.

G. *Counsel's Conflict of Interest and Appointment by the Trial Court.*

Petitioner's eighth ground for relief asserts that his trial attorney, Erane Washington, operated under a conflict of interest by failing to inform him that she was married to the prosecutor who initiated the charges against him. The ninth and final habeas claim alleges that the trial court knowingly appointed Ms. Washington without inquiring about the conflict.

Petitioner raised this issue in his motion for relief for judgment, which the trial court denied under Michigan Court Rule 6.508(D)(3) because he failed to show "good cause" for not raising his claim on direct appeal and "actual prejudice" from the alleged irregularity. As a result of that ruling, Respondent argues that Petitioner's claim is procedurally defaulted.

1. Procedural default.

In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Under the doctrine of

procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). In the Sixth Circuit,

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." [*Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011)]. To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing of the claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

The state procedural rule at issue here is Michigan Court Rule 6.508(D)(3), which reads in relevant part as follows:

> (D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion
>
>       . . . .
>
> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
>> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>>
>> (b) actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. R. 6.508(D)(3).

Petitioner violated this rule by not raising his conflict-of-interest claim in his appeal of right. He raised the claim for the first time in his post-appeal motion for relief from judgment. Petitioner's violation of Rule 6.508(D)(3) satisfies the first procedural-default factor.

The last state court to address Petitioner's claim in a reasoned opinion was the trial court, and it rejected the claim because he did not show "good cause" under Rule 6.508(D)(3)(a) or "actual prejudice" under Rule 6.508(D)(3)(b). This ruling constituted enforcement of Rule 6.508(D), and even though the trial court also addressed Petitioner's claim on the merits, the alternative holding does not require this Court to disregard the state court's procedural ruling. *Coe*, 161 F.3d at 330. As explained in *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989),

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. See *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L. Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes*, 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

(emphasis in original). Thus, the trial court's ruling satisfies the second procedural-default factor.

The third procedural-default factor also is satisfied because Rule 6.508(D) is an adequate and independent ground on which state courts may rely to foreclose review of federal claims. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). So,

to prevail on his procedurally defaulted claim, Petitioner must show cause for his state procedural error and resulting prejudice.

### 2. Cause and prejudice

Petitioner alleges that he could not raise his claim on direct appeal because no one revealed the conflict of interest to him and because he did not discover the conflict until he received his attorney's case file on May 17, 2015, despite his diligent efforts to acquire the file. Even if the Court were to assume that Petitioner has shown cause for his procedural default, he has not shown resulting prejudice.

The record before the Court reveals that Petitioner initially was represented by the Washtenaw County Public Defender's Office, and when the Public Defender announced that it had a conflict of interest, the trial court appointed the Julington Law Firm to represent Petitioner. ECF 14-4, PgID 729. At the time, the Julington Law Firm held the contract for representing defendants when the Washtenaw County Public Defender's Office had a conflict of interest. *See* Order Denying Mot. for Relief from J., ECF 14-19, PgID 1585. Ms. Washington was a member of the Julington Law Firm, and she was present when the trial court appointed her firm to represent Petitioner. ECF 14-4, PgID 729.

Petitioner also claims that Ms. Washington is married to Anthony Kendrick who authorized the charges against him and, therefore, Ms. Washington had a conflict of interest. But, Mr. Kendrick did not conduct the preliminary examination, nor represent the People of the State of Michigan at trial, and, according to the trial court, Kendrick was not the prosecuting attorney's direct supervisor.

Furthermore, Ms. Washington did not actively represent Petitioner in pretrial hearings or at trial. Attorney John Paul Vella represented him at pretrial hearings after the Public Defender withdrew from the case. Mr. Vella also represented Petitioner at trial, and even though Mr. Vella stated during *voir dire* that Ms. Washington would be assisting him, ECF 14-10, PgID 817, Vella performed all the obvious trial tasks. He participated in *voir dire*, conducted all the cross-examinations, made all the defense objections, argued the motion for a directed verdict of acquittal, participated in bench conferences and other discussions, made the closing argument, and was present when the jury reached its verdict. Petitioner has not shown that he was prejudiced by the alleged conflict of interest and, therefore, he cannot excuse his procedural default.

2. Miscarriage of justice

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim if he can demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (internal citation and quotation omitted). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not presented the Court with any new and reliable evidence of actual innocence. A miscarriage of justice will therefore not occur.

For the reasons set forth above, Petitioner's eighth and ninth claims are procedurally defaulted, his state-law claims are not cognizable on habeas review, and the state courts' rejection of Petitioner's constitutional claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the amended habeas petition [10] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's motion for a stay and to hold his habeas petition in abeyance [16] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues presented deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

**IT IS FURTHER ORDERED** that Petitioner may proceed *in forma pauperis* if he appeals this decision because he was granted leave to proceed *in forma pauperis* in this Court, and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
Dated: August 28, 2019             United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 28, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager
